# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

Brittany L. Lewis, Legal Guardian of the  \*
Property of JCL, a Minor  \*  Civil Action No. CCB-19-860
                          \*
v.                        \*
                          \*
Aetna Life Insurance Company, et al.  \*

## MEMORANDUM

Brittany Lewis, as legal guardian of the property of her daughter, JCL, sues Aetna Life Insurance Company ("Aetna"), LJT & Associates, Inc. ("LJT"), and LJT & Associates, Inc. Welfare Plan (the "Plan"), for the improper denial of benefits under an employee benefits plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), pursuant to 29 U.S.C. §1132(a)(1)(B). Lewis brings a claim for denial of supplemental life insurance benefits (Count I), and a claim for denial of basic and supplemental accidental death and personal loss benefits (Count II). LJT and the Plan have filed a motion to dismiss both counts, and Aetna has filed a motion to dismiss Count II. The motions have been fully briefed and no oral argument is necessary. For the reasons stated below, the court will grant in part and deny in part LJT and the Plan's motion to dismiss, and will grant Aetna's motion to dismiss.

## FACTS

On June 9, 2016, Justin Lewis[1] died in a car accident when, while driving in Maryland, he "for 'an unknown reason' . . . left the roadway and struck a tree." (Compl. ¶¶ 11, 13). The postmortem toxicology report found that Justin Lewis's blood ethanol content ("BAC") was .21%. (*Id.* ¶ 17). Through his employment with LJT, Justin Lewis had enrolled in the Plan, which provided basic life insurance and accidental death and personal loss ("ADPL") benefits, and Justin Lewis had also enrolled in supplemental basic life insurance and supplemental ADPL.

---

[1] This memorandum refers to Justin Lewis by his full name, and to plaintiff Brittany Lewis as "Lewis."

1

(*Id.* ¶¶ 8, 9). Justin Lewis was enrolled in the Plan at no cost, and LJT deducted from his pay each month $11.70 for the supplemental life insurance and $4.50 for the supplemental ADPL benefits. (*Id.* ¶¶ 8, 10). The beneficiary of the life insurance and ADPL benefits was Justin Lewis's then three-year-old daughter, JCL. (*Id.* ¶¶ 1, 9, 12). Brittany Lewis, the ex-wife of Justin Lewis and mother of JCL, is the legal guardian of the property of JCL. (*Id.* ¶ 1).

Brittany Lewis timely filed for benefits. (*Id.* ¶ 18). On August 17, 2016, LJT prepared and submitted to Aetna a proof of death, and on March 10, 2017, submitted to Aetna a second proof of death, which apparently revised the amounts Justin Lewis was owed under his various enrollments. (*Id.* ¶¶ 19, 20). According to LJT's proof of death form, Justin Lewis "had Basic Life Insurance in the amount of $46,000, Supplemental Life Insurance in the amount of $150,000, Basic ADPL benefits in the amount of $46,000, and Supplemental ADPL benefits in the amount of $150,000." (*Id.* ¶ 20). Aetna paid Brittany Lewis $45,091.05 for basic life insurance, but by letters dated April 7, 2017, and April 14, 2017, denied her claims for supplemental life insurance benefits, and basic and supplemental ADPL benefits, respectively. (*Id.* ¶¶ 21–23).

Aetna denied the supplemental life insurance benefits because it claimed that Justin Lewis had never submitted evidence of his good health, even though he was required to because he enrolled in the plan more than thirty days after his eligibility date. (*Id.* ¶ 33). Therefore, although Justin Lewis paid a premium every month for the coverage, Aetna claimed he was never actually approved. (*Id.* ¶ 39). According to Brittany Lewis, neither Aetna nor LJT have any correspondence informing Justin Lewis he was required to submit proof of insurability, and it appears that Aetna and LJT both claimed that it was the other's responsibility to provide such notice. (*Id.* ¶¶ 40–43). Additionally, "[t]he Plan provides Aetna will rely upon representations

2

of LJT as to eligibility for coverage and as to any fact concerning eligibility" and LJT previously determined Justin Lewis was properly enrolled for supplemental life benefits. (*Id.* ¶ 44).

Aetna denied Brittany Lewis's claim for ADPL benefits, relying upon an exclusion in coverage for death caused by the "use of alcohol or intoxicants or drugs while operating any form of a motor vehicle." (*Id.* ¶ 50). The exclusion further provides that "[o]perating the motor vehicle while under the influence of alcohol is . . . a level which meets or exceeds the level at which intoxication would be presumed under the laws of the state where the accident occurred." (*Id.*). Aetna found that Justin Lewis's death was caused by the use of alcohol while driving because the toxicology report "showed Mr. Lewis' BAC was 0.21%, which exceeds the Maryland legal intoxication level." (*Id.* ¶ 51).

## STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S.*

3

*ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart,* 680 F.3d 359, 365 (4th Cir. 2012)).

## DISCUSSION

<u>Whether LJT and the Plan are proper defendants</u>

LJT and the Plan argue that they are not proper defendants because it is Aetna, and not LJT or the Plan, that controls the payment of benefits under the Plan.[2] For the reasons stated below, the court will not dismiss Count I as to LJT and the Plan.[3]

"[T]he law in this district is that the proper party defendant [in an action to recover benefits] is the entity which holds the discretionary decision-making authority over the denial of ERISA benefits." *Ankney v. Metropolitan Life Ins.*, 438 F. Supp. 2d 566, 574 (D. Md. 2006) (citing *Briggs v. Marriott Int'l, Inc.*, 368 F. Supp. 2d 461, 471–72 (D. Md. 2005), *aff'd* 205 F. App'x. 183 (4th Cir.2006)); *see also Trotter v. Kennedy Krieger Inst., Inc.*, Civil No. 11-3422-JKB, 2012 WL 3638778, at *3 (D. Md. Aug. 22, 2012).[4]

First, the claims may be brought against the Plan. Courts in this Circuit have stated that an ERISA benefits action may be brought against the entity with decision-making authority and the benefit plan itself. *See Wingler v. Fidelity Investments,* No. WDQ-12-3439, 2013 WL 6326585, at *3 & n.4 (D. Md. Dec. 2, 2013) ("The proper defendants in an ERISA benefits action are the benefit plan and the entity with discretionary decision-making authority."); *Abbott v. Duke Energy Health & Welfare Ben. Plan*, No. 3:07-CV-00110, 2007 WL 2300797, at *2

---

[2] LJT also cites to *Moon v. BWX Techns. Inc.*, 577 F. App'x 224 (4th Cir. 2014) for the proposition that "acceptance of premiums and an alleged failure to notify the plan participant of his ineligibility under the plan" are not discretionary functions that make the employer an ERISA fiduciary. (ECF 27-1, LJT's Reply at 2). *Moon*, however, is an unreported case which has been called into doubt by *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 280 n.14 (4th Cir. 2019). Regardless, though, *Moon* and *Dawson* each involved a claim for breach of fiduciary duty related to the failure to notify the participant of his ineligibility for benefits. As Lewis did not bring such a claim, those cases are not dispositive.

[3] Count II will be discussed *infra*. As noted, Aetna does not seek to dismiss Count I.

[4] Unreported decisions are cited for the soundness of their reasoning, not for any precedential value.

4

(W.D.N.C. Aug. 7, 2007) ("In an unpublished decision, the Fourth Circuit sided with those circuits which have employed a control test to determine whether a non-plan party can be named," citing to *Gluth v. Wal-Mart Stores, Inc.*, No. 96-1307, 1997 WL 368625, at *6 (4th Cir. 1997)).[5] Therefore, it appears that the benefits plan may be a proper defendant regardless of whether it has discretionary decision-making authority over the denial of benefits. Moreover, Lewis argues that the Plan is a necessary party as "if Plaintiff prevails, it will likely be the Plan who pays Plaintiff the benefits," (ECF 22-1, Opp'n at 6 n.1), and LJT and the Plan do not address this.

Second, given the factual dispute about whether LJT failed to notify Justin Lewis of the requirement to submit proof of insurability, and because the Plan remains in this case in any event, the court declines to dismiss LJT at this time.

Accordingly, the court will deny the motion to dismiss Count I as to LJT and the Plan pending further factual development regarding the denial of the supplemental life benefits.[6]

Dismissal of Count II

The defendants[7] argue that Lewis failed to exhaust her administrative remedies as to the denial of ADPL benefits, because she failed to properly appeal the denial, and that, regardless, Justin Lewis's death falls under the exclusion from coverage based on driving while legally intoxicated. Lewis argues that she was excused from exhausting her administrative remedies

---

[5] In an ERISA action for denial of benefits under a pension plan, a district court stated that "[a]lthough the Fourth Circuit has not published a decision that expressly holds who is a proper defendant in an action for benefits under Section 1132(a)(1)(B), the Fourth Circuit appears to be aligned with those circuits that permit a plaintiff to bring an action to recover benefits under Section 1132(a)(1)(B) against the pension plan itself as an entity *and* any fiduciaries who control the administration of the pension plan." *McRae v. Rogosin Converters, Inc.*, 301 F. Supp. 2d 471, 475 (M.D.N.C. 2004) (emphasis added).

[6] Aetna did not move to dismiss Count I.

[7] LJT and the Plan's brief contains some argument regarding administrative exhaustion and exclusion from coverage as to Count II, and also incorporates the arguments made by Aetna.

because to do so would be futile, and that the language of the exclusion requires Aetna to prove that Justin Lewis was "consuming alcohol while driving," which it has not done.

"When interpreting the benefits provisions of ERISA-regulated insurance plans, the plain language is paramount." *Eckelberry v. Reliastar Life Ins. Co.*, 469 F.3d 340, 343 (4th Cir. 2006). Courts should enforce an ERISA plan in accordance with "its literal and natural meaning." *Mid Atlantic Medical Services, LLC v. Sereboff*, 407 F.3d 212, 220 (4th Cir. 2005) (quotation marks and citations omitted). An ERISA plan may exclude coverage for injuries caused by the operation of a motor vehicle if "the covered person had a blood alcohol level that meets or exceeds the legal limit as established by the state in which the accident occurred." *Bickel v. Sunbelt Rentals, Inc.*, No. WMN-09-2735, 2010 WL 3938348, at *3 (D. Md. Oct. 6, 2010) (also stating that "Defendant unquestionably had the authority to frame its exclusion under the terms that it did," *id.* at *4); *cf. Eckelberry*, 469 F.3d at 345 ("If the insurer did not intend to cover any injury to a drunk driver, then drunk driving would have been a specific exclusion listed in the plan," thereby contemplating that such an exclusion would be allowable).

According to the complaint, which in turn quotes from the Plan, "Aetna relied upon an exclusion to coverage, which provides that no benefits are payable for a 'a loss caused or contributed by' 'use of alcohol or intoxicants or drugs while operating any form of a motor vehicle . . . . A motor vehicle accident will be deemed to be caused by the use of alcohol, intoxicants, or drugs if it is determined that at the time of the accident you or your covered dependent were: Operating the motor vehicle while under the influence of alcohol is [sic?] a level which meets or exceeds the level at which intoxication would be presumed under the laws of the state where the accident occurred.'" (Compl. ¶ 50; ECF 1-1 at 27).

Here, even assuming that exhaustion of administrative remedies would have been futile, a plain reading of the Plan demonstrates that Justin Lewis's death was excluded from coverage. Lewis's argument that the language of the exclusion requires Aetna to show that Justin Lewis was actually drinking alcohol while he was driving is not persuasive. First, it is contrary to the plain language. The Plan contains an exclusion for loss caused by the use of alcohol while operating a motor vehicle, and then clarifies that "[a] motor vehicle accident will be deemed to be caused by the use of alcohol" if the driver has a BAC level at which intoxication would be presumed under the law of the state.[8] While the court agrees that the language of the exclusion could have been written more clearly, the exclusion's "literal and natural meaning," especially when the relevant portions are read as a whole, is that losses caused by driving a motor vehicle while intoxicated (*i.e.* with a BAC above the legal limit) are excluded from coverage.

Second, the cases Lewis cites for the proposition that courts do not approve "*per se* rules" in the context of drunk driving crashes are inapposite. For example, *Firman v. Becon Const. Co., Inc.*, found it an abuse of discretion for the administrator to adopt a "*per se* rule that drunk driving deaths can never be an 'accident' under a policy *that contains no exclusion for drunk driving*." 789 F. Supp. 2d 732, 744 (S.D. Tex. 2011), *aff'd sub nom.*, 684 F.3d 533 (5th Cir. 2012) (emphasis added). Here, as stated above, the Plan does contain an exclusion for drunk driving. Similarly, in *Eckelberry*, where the court found that the plan administrator did not apply a *per se* rule to find that drunk driving can never be an accident, there was also no specific

---

[8] Here, that would be Maryland law, and Lewis does not appear to contest that Justin Lewis's post-mortem BAC level was above the limit. (Compl. ¶ 51). Regardless, the court may take judicial notice of Maryland's definition of "under the influence of alcohol per se" which means "having an alcohol concentration at the time of testing of 0.08 or more as measured by grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath." Md. Transp. Code § 11-174.1 (2018); Md. Cts & Jud Pro Code § 10-307(g) (2018) ("If at the time of testing a person has an alcohol concentration of 0.08 or more, as determined by an analysis of the person's blood or breath, the person shall be considered under the influence of alcohol per se as defined in § 11-174.1 of the Transportation Article."); *see U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (on a motion to dismiss, the court "'may properly take judicial notice of matters of public record,' including statutes") (citation omitted).

7

exception for drunk driving. 469 F.3d at 345 (also finding that the death at issue, which was caused by driving while intoxicated, was not "accidental" within the meaning of the policy, *id.* at 347). Here, though, Aetna did not apply a *per se* rule that a death caused by the decedent's drunk driving can never be an accident within the meaning of the Plan. Rather, it applied the specific exclusion for driving while intoxicated.

Therefore, for the reasons stated above, the court will dismiss Count II.

## CONCLUSION

Accordingly, the court will grant the defendants' motions to dismiss Count II and will deny LJT and the Plan's motion to dismiss Count I. A separate order follows.

1/15/20
Date

Catherine C. Blake
United States District Judge